UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| QUINTINA ROGERS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 13 C 6761 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| JEWEL FOOD STORES, INC., | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Quintina Rogers, a former employee of Jewel Food Stores, Inc. ("Jewel") and a former member of the United Food and Commercial Workers International Union Local 881 (the "Union"), was terminated from her job at Jewel for allegedly discounting a bottle of vodka. She originally filed a *pro* se complaint against Jewel. With the assistance of counsel, Rogers filed an amended complaint alleging that Jewel breached the terms of its collective bargaining agreement with the Union (a hybrid Section 301/fair representation claim under the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*) and violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Before the Court is Jewel's motion to dismiss the hybrid Section 301/fair representation claim [38]. The motion to dismiss is granted. While the Court finds that the claim relates back to Rogers' initial complaint, which was filed within six months of the Union's final decision on Rogers' grievance, the Court additionally finds that Rogers has failed to sufficiently allege that the Union breached its duty to fairly represent her; thus, Rogers cannot proceed on her breach of contract claim against Jewel.

# BACKGROUND[1]

Rogers began working at Jewel as a service clerk on October 27, 2007, regularly working more than 16 hours per week overseeing self-checkout lines and acting as a cashier. A dedicated employee who took pride in her work, Rogers received good performance reviews and maintained an excellent disciplinary record, earning commendations from customers and Jewel management staff. Prior to November 14, 2012, Rogers had never been accused of any form of theft, misappropriation, or inadvertent mishandling of cash, nor had she ever been cited by Jewel management for improper discounting or voiding of transactions.

On November 14, 2012, Senior Security and Loss Prevention Manager Marty Oppenhauser accused Rogers of stealing coins and cash from her register, as well as improperly discounting and voiding a transaction involving a bottle of vodka. All of the alleged incidents were unsubstantiated by reasonable or reliable evidence, as Jewel staff, including Oppenhauser, knew at the time of the November 14, 2012 meeting. Shortly after that meeting concluded, Oppenhauser and Assistant Store Manager Donna Rogers (no relation to Plaintiff) conferred and advised Rogers that she was suspended effective immediately.

Rogers immediately contacted the Union and, on November 15, 2012, filed a Grievance Investigation Report. On November 21, 2012, a meeting about the alleged incidents took place with Oppenhauser's superior, Mary Junger, Jewel's District Manager for Loss Prevention. Rogers' Union representative, Marcella Robinson, and her supervisor, Cozetta Alcorn, were also present. At this meeting, Rogers expressed her desire to see the video of the incidents in question but was told the video was the property of Jewel's Loss Prevention Program.

---

[1] The facts in the background section are taken from Rogers' Amended Complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Jewel's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

On December 1, 2012, Alcorn advised Rogers that she was terminated for improperly discounting a bottle of vodka. Rogers, concerned about the injustice of her termination, attempted to contact Robinson, her Union representative, throughout the month of December 2012 to check on the status of her grievance. Robinson finally responded at the end of the month and advised Rogers not to worry.

On January 23, 2013, the Union notified Rogers by letter that it had decided not to pursue her grievance to arbitration, citing the facts uncovered in its investigation of Rogers' conduct and unfavorable precedent in arbitration of similar cases with Jewel. Rogers formally appealed the Union's decision on February 1, 2013. The Union confirmed receipt of Rogers' letter and request for appeal in a second letter on February 6, 2013, informing Rogers that a final decision would be made by the Executive Board at its next meeting on April 9, 2013. In a subsequent letter dated April 10, 2013, the Union notified Rogers that her appeal had been denied, that the Executive Board had determined that her grievance lacked merit, and that the Union considered the matter closed. Rogers continued to request a copy of her grievance file and other materials related to her termination, including the video, but the Union informed her that the documents were Union property in a May 8, 2013 letter.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Statute of Limitations

Jewel first argues that Rogers' hybrid claim is barred by the statute of limitations because it was filed over a year after Rogers learned that the Union would not pursue her grievance. The statute of limitations is an affirmative defense that need not be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). Here, the Amended Complaint sets forth the allegations necessary to address the statute of limitations issue and so the Court will consider Jewel's argument.

The applicable statute of limitations for hybrid Section 301/fair representation claims is six months from the time the plaintiff discovers or in the exercise of reasonable diligence should have discovered the alleged violation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–72, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983); *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999). This typically occurs "from the time a final decision on a plaintiff's

4

grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 505 (7th Cir. 1999) (quoting *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986)). The statute of limitations is tolled, however, during the pendency of "internal union procedures that possibly may provide [the plaintiff] with a remedy," even "where those remedies are ultimately determined to have been futile." *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*, 782 F.2d 674, 681 (7th Cir. 1986); *Truhlar v. John Grace Branch #825 of Nat'l Ass'n of Letter Carriers*, 600 F. Supp. 2d 964, 972 (N.D. Ill. 2009) (*Frandsen* tolling should be flexibly applied and not limited solely to formal procedures contemplated in the collective bargaining agreement "if the employees understood that appeals are routinely dealt with in a manner not explicitly discussed in the CBA").

Jewel argues that Rogers' claim accrued on January 23, 2013, when the Union informed her that it would not be pursuing her grievance through the final steps of arbitration. But the Amended Complaint reveals that this letter did not signal the Union's final decision. Instead, Rogers pursued a formal appeal of the Union's decision, which the Union indicated would be addressed at the next meeting of its Executive Board on April 9, 2013. On April 10, 2013, the Union notified Rogers that the Executive Board determined her grievance lacked merit, denied her appeal, and closed the matter. Only then did the statute of limitations on her hybrid claim begin to run. *See Frandsen*, 782 F.2d at 681–84.

Jewel argues that even if the statute of limitations period was tolled while Rogers pursued internal union remedies, her hybrid Section 301/fair representation claim is still untimely because she asserted this claim for the first time on March 7, 2014 and not in her initial *pro se*

5

complaint filed on September 20, 2013. Although her *pro se* complaint would be timely, as it falls within the six-month period, Jewel argues that the hybrid claim does not relate back to that date because it does not arise out of the same set of facts and circumstances as the ADEA claim included in the *pro se* complaint.

Rogers' hybrid claim relates back to the date of her *pro se* complaint if that claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This means that an amended complaint relates back to an earlier complaint if both are based on the same "common 'core of operative facts.'" *Mayle v. Felix*, 545 U.S. 644, 659, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005) (citations omitted). Rogers' original complaint merits a generous interpretation because it was prepared without the assistance of counsel. *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)); *Bryant v. Gen. Packaging Prods., Inc.*, 473 F. Supp. 2d 853, 857 (N.D. Ill. 2006) (giving initial *pro se* complaint liberal interpretation for purposes of determining whether amended complaint related back to date of original filing).

Although Rogers' *pro se* complaint did not include a claim for a breach of the collective bargaining agreement or the Union's duty of fair representation, the general factual allegations were sufficient to put Jewel on notice of the conduct underlying Rogers' hybrid claim. Her *pro se* complaint narrates her suspension and termination, including her interaction with the Union and attempt to grieve the termination notice. Rogers includes allegations that she spoke to her Union representative in December 2012 who assured her she had nothing to worry about but that she was then denied the rights provided to her by her collective bargaining agreement when she was not allowed to dispute the allegations in her termination notice. Rogers' hybrid claim,

6

although pleaded with more detail in the Amended Complaint, arises out of the same factual situation alleged in her *pro se* complaint. Because Jewel's attention was brought to the situation by the initial complaint and her hybrid claim shares a common core of operative facts with the ADEA claim pleaded in Rogers' *pro se* complaint, the Court finds that the hybrid claim relates back to the date of the original pleading and is thus timely. *See Bryant*, 473 F. Supp. 2d at 857–58.

## II.   Adequacy of Rogers' Pleading

Jewel alternatively argues that Rogers' hybrid Section 301/fair representation claim must be dismissed because it does not sufficiently allege that the Union breached its duty of fair representation. In order to bring this hybrid claim against Jewel, Rogers must not only allege that Jewel breached the collective bargaining agreement but also that the Union breached its duty of fair representation.[2] *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 913–14 (7th Cir. 2013).

Just as "fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes [its members] a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 75, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991). Unions enjoy wide discretion in the performance of this duty, however, and the duty is breached only when the Union's conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); *Yeftich*, 722 F.3d at 916. In evaluating whether a breach has occurred, the Court must consider each prong separately. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003).

---

[2] The Union is not a necessary party to the action, however, and thus it is not problematic that Rogers voluntarily dismissed her claims against the Union. *See Albano v. Roadway Express, Inc.*, No. 04 C 5291, 2005 WL 1026578, at *3 (N.D. Ill. Mar. 24, 2005) (fact that plaintiff voluntarily dismissed duty of fair representation claim against union did not require breach of contract claim to be dismissed as there had been no determination with respect to union's actions); *Balsamo v. One Source, N. Reg'l Commuter R.R. Corp.*, No. 04 C 6172, 2005 WL 396303, at *3–4 (N.D. Ill. Feb. 16, 2005).

7

Rogers' Amended Complaint focuses on whether the Union acted arbitrarily or in bad faith. To determine whether a union has acted in bad faith, courts must conduct "a subjective inquiry and require[] proof that the union acted (or failed to act) due to an improper motive." *Id.* Allegations of "fraud, deceitful action or dishonest conduct" are evidence of bad faith, *see Humphrey v. Moore*, 375 U.S. 335, 348, 84 S. Ct. 363, 11 L. Ed. 2d 370 (1964), but a plaintiff must supply more detail than just "[b]are assertions of the state of mind," *Yeftich*, 722 F.3d at 916. Arbitrariness, on the other hand, is an objective inquiry, *Neal*, 349 F.3d at 369, with a union's actions considered arbitrary "only if . . . the union's behavior is so far outside a wide range of reasonableness as to be irrational," *Filippo v. N. Ind. Pub. Serv. Corp.*, 141 F.3d 744, 749 (7th Cir. 1999) (internal quotation marks omitted) (citation omitted). The inquiry is "very deferential," as "Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative." *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992). A union may not "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca*, 386 U.S. at 191. But an employee cannot compel arbitration and must instead accept the union's exercise of its "discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer." *Neal*, 349 F.3d at 369. Only an "egregious disregard for union members' rights" qualifies as a breach of the union's duty. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (quoting *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985)).

In a similar situation, the Seventh Circuit recently considered whether a complaint was properly dismissed for failure to allege breach of the duty of fair representation. *Yeftich*, 722 F.3d 911. In *Yeftich*, the plaintiffs also argued that the Union had acted arbitrarily and in bad

8

faith by treating their grievances in a perfunctory fashion or not at all. *Id.* at 916. The complaint alleged that the union knew the employer acted in violation of the collective bargaining agreement, that the union intentionally misled plaintiffs with respect to the status of their grievances and instead "invidiously diverted, stalled, and otherwise terminated and abandoned the grievances," that the union represented that large numbers of grievances were awaiting action by high union officials when they were instead already processed and closed, and that the union refused to provide plaintiffs with copies of the collective bargaining agreement. *Id.* The Seventh Circuit found that plaintiffs did not support their bad faith claim by anything but "conclusory labels" and so did not "suggest a motive for the union's alleged failure to deal with the grievances." *Id.* As for whether the union's actions were arbitrary, the Seventh Circuit also found the complaint to be missing factual detail regarding, for example, how long they waited for a response after filing a grievance or how they knew that the wait time was abnormal or arbitrary. *Id.* at 917.

Guided by *Yeftich*, the Court finds that Rogers has failed to sufficiently allege either bad faith or arbitrariness by the Union. Although she has alleged that the Union "[i]mproperly, arbitrarily, and irrationally preclude[ed] [her] from asserting her rights" under the collective bargaining agreement, and concealed or failed to inform her that it was not investigating her grievance, Am. Compl. ¶ 63, these allegations are conclusory and not supported by the required factual specificity, *Yeftich*, 722 F.3d at 916–17. Rogers has included no allegations from which the Court could infer a bad faith motive for the Union's decision not to further pursue Rogers' grievance and not provide her with her files. *Id.* at 916. Moreover, Rogers admits in her Amended Complaint that the Union's letter informing her that it decided not to pursue her grievance was based on the facts it uncovered in its investigation and its arbitration history in

9

similar cases with Jewel. This does not suggest arbitrariness; instead, it supports the conclusion that the Union was exercising its discretion not to pursue every grievance filed in light of facts such as the "allocation of its own resources" and "its relationship with the employer." *Neal*, 349 F.3d at 369. Because Rogers' Amended Complaint fails to allege facts from which the Court could infer that the Union acted in "egregious disregard" of her rights, but rather only suggests that Rogers was not satisfied with the outcome of the grievance process, she has failed to allege a breach of the duty of fair representation. *See Yeftich*, 722 F.3d at 916 (the decision to "declin[e] to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation"); *Lewis v. Dominick's Finer Foods, LLC*, No. 13 C 530, 2013 WL 4401376, at *4–5 (Aug. 14, 2013) (plaintiff's allegations that union did not investigate as thoroughly as it should have were not sufficient to survive a motion to dismiss). Thus, Rogers' hybrid Section 301/fair representation claim is dismissed.

## CONCLUSION

For the foregoing reasons, Jewel's motion to dismiss [38] is granted. Counts I and III of the Amended Complaint are dismissed without prejudice.

Dated: September 30, 2014

_____
SARA L. ELLIS
United States District Judge

10